HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOT B. ACTON,

    Plaintiff,

v.

TARGET CORPORATION, et al.,

    Defendants.

CASE NO. C08-1149RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendant Target Corporation's motion for summary judgment. Dkt. # 86. For the reasons stated below, the court DENIES the motion, and DENIES Mr. Acton's untimely motion (Dkt. # 106) for leave to file an untimely surreply.

## II.  BACKGROUND

Plaintiff Scot Acton began working at Target's Burlington, Washington retail store in 2001. He was in charge of "asset protection" at the store. Among other things, he was responsible for protecting the store from shoplifters and employee theft. Target fired him on December 15, 2007, the day he returned from an approved medical leave that had kept him away from work since July 19, 2007.

Target contends that it fired him because he used excessive force while apprehending a shoplifter at the store on July 7, 2007. While Mr. Acton was on leave, his

ORDER – 1

1  supervisor, Jerrod Johnson[1], reviewed a video of Mr. Acton's apprehension of a
2  shoplifter at the store on July 7, 2007. Upon review of the video, he concluded that Mr.
3  Acton used excessive force after apprehending the shoplifter. He decided to fire Mr.
4  Acton. He notified four Target executives of his decision. None of them disagreed with
5  it.
6       Mr. Acton contends that Target fired him because he had a disability. Mr. Acton
7  undisputedly suffered from cluster migraine headaches, and had sought medical treatment
8  for them for years. Target undisputedly knew as much. Mr. Acton had discussed his
9  headaches repeatedly with co-workers and supervisors. Target approved leave under the
10  federal Family Medical Leave Act ("FMLA") to accommodate his headaches, and twice
11  extended it at Mr. Acton's request. Mr. Acton was on FMLA leave from late July 2007
12  until he returned to work on December 15, 2007. On that day, Mr. Johnson and
13  Burlington store manager Jeffrey Tomlinson informed Mr. Acton that he was fired. Mr.
14  Acton contends that Target fired him for at least one impermissible reason: because of his
15  disability or because he had taken FMLA leave. He thus brings claims under the
16  Americans with Disabilities Act ("ADA"), the Washington Law Against Discrimination
17  ("WLAD"), and the anti-retaliation provisions of the FMLA. He also contends that
18  Target failed to reasonably accommodate his disability in violation of the ADA and
19  WLAD, and terminated him in violation of Washington public policy.
20       Target seeks summary judgment on all of Mr. Acton's claims.

### III.  ANALYSIS

22  On a motion for summary judgment, the court must draw all inferences from the
23  admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred*

---

[1] Target stores nationwide are divided into regions, which are in turn subdivided into groups, which are in turn subdivided into districts. The Burlington store is one of several in District 157 of Group 198. Persons in charge of asset protection at a store carry the title "Executive Team Leader – Asset Protection." Where clarity demands, the court will use the ungainly acronym "ETLAP." Mr. Johnson was in charge of asset protection for all of District 157. He is a "DAPTL."

ORDER – 2

*Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must first show the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), shifting the burden to the opposing party to show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

In this case, the summary judgment standard is fatal to Target's motion. The parties' briefs and the voluminous evidence they submitted in support of them reveal factual disputes far too numerous to recount in this order. Not all of those disputes are material. Indeed, many of them are wholly irrelevant. Nonetheless, the material facts are in dispute, as the court discusses below. The parties should not confuse the court's discussion of the evidence with factual findings. The court makes no factual findings, it simply notes factual findings that a jury could make from the evidence presented. A jury could reach myriad findings from the evidence the parties presented, and the court makes no effort in this order to discuss all of the evidence or to exhaust the conclusions a jury might draw from it.

The court's review of the evidence does not belabor the familiar *McDonnell-Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Briefly, the court observes that Mr. Acton met his burden to prove a prima facie case of disability discrimination and FMLA retaliation, and that Target met its burden to proffer a non-discriminatory reason for firing him. The court's ruling today hinges on Mr. Acton's evidence that Target's non-discriminatory reason was pretext, as will be apparent in the court's discussion below.

ORDER – 3

### A. A Jury Could Conclude that Mr. Acton Was Terminated Because of His Disability or in Retaliation for His FMLA Leave.

Mr. Acton left Target in late July 2007, and submitted a request for FMLA leave on or about August 8. That request contained documentation from his physician that he needed leave to control his headaches. There is evidence that Mr. Acton's superiors had several times that year expressed concern or disappointment over issues at least arguably related to his headaches. In February 2007, David Neisen, the DAPTL at the time, made an unannounced visit to the Burlington store. Mr. Acton was not present, and Mr. Neisen expressed concern that others did not know why he was gone or when he would return. He missed store meetings in March 2007, and both Mr. Neisen and Emily Krieg, the store manager at the time, expressed concern that he had not given advance notice of his absence. In June 2007, the Bellingham store manager complained that Mr. Acton had not completed a security camera installation. He complained that Mr. Acton was frequently absent without explanation. Mr. Acton contends that these absences were caused by his headaches. In July 2007, there is evidence that his headaches worsened substantially, and that he began to use or increase his use of prescription medication with substantial side effects. He had several more absences or early departures from work as a result.

Mr. Johnson did not begin working at Target until June 2007. When he first visited the Burlington store, Mr. Acton was absent without explanation. They met in person for the first time on July 10 at the District 157 office. What happened at that meeting is disputed. According to Mr. Acton, Mr. Johnson told him he could not take his medication at work, an allegation that Mr. Johnson disputes. Mr. Johnson stated that when he asked Mr. Acton about an unapproved extension of a recent vacation, Mr. Acton cited unspecified medical needs. Mr. Johnson contends that he told Mr. Acton he was not concerned that he had taken time off, but rather that he had not communicated adequately with his supervisors and others at the store.

ORDER – 4

1    July 19, 2007, was Mr. Acton's last day at work until December.  Mr. Acton had
2    missed another day of work since his meeting with Mr. Johnson, informing him by text
3    message that he was ill.  On July 19, he called Mr. Johnson and stated that he would need
4    to leave work early because of his medication.  He was scheduled to start a vacation the
5    following week.  About a week later, Mr. Acton contacted the Burlington store human
6    resources manager and asked her to tell Mr. Johnson that he would be taking an
7    additional four to five days off, again because of his medication.

8    On August 6, 2007, Mr. Acton spoke with Mr. Johnson on the phone, explaining
9    he would need additional time off work.  Mr. Johnson expressed disappointment at the
10   manner in which Mr. Acton had communicated his absences.  He also advised him to
11   contact human resources personnel regarding FMLA leave.  Mr. Acton requested FMLA
12   leave, and Target approved it.  He extended his leave at his own request at least twice.
13   Target paid him for the entirety of his leave, which ended December 15.

14   There is evidence that Mr. Johnson began reviewing Mr. Acton's performance in
15   early August 2007.  On August 3, Mr. Neisen forwarded him emails from March and
16   June 2007 regarding his absences.  On August 10, Mr. Tomlinson forwarded Mr. Johnson
17   emails relating to concerns over his absences.  A jury could find that Mr. Johnson
18   requested those emails, and that he was probing for reasons to take action against Mr.
19   Acton before he was aware of the July 7 shoplifter apprehension.

20   On August 27, 2007, Mr. Johnson reviewed the video of Mr. Acton's July 7
21   shoplifter apprehension.  Shortly before that, Mr. Johnson reviewed Mr. Acton's report
22   on the incident for the first time.  Mr. Acton prepared the report on the day of the
23   apprehension, as Target policy required.  Mr. Johnson could have reviewed the report at
24   any time.  Indeed, the evidence suggests that part of his job was to review such reports
25   within a day or two.  Nonetheless, he did not review the report until after he had begun
26   searching for information on Mr. Acton's job performance.  He contends that based on

28   ORDER – 5

Mr. Acton's narrative in the report, he decided to review the video. He admits that he had never reviewed any apprehension video before that, and has not reviewed one since.

Mr. Johnson contends that the video reveals Mr. Acton used excessive force on the shoplifter. The alleged use of force came after Mr. Acton and his subordinate, Peter Findlay, had apprehended the shoplifter, handcuffed him, and brought him into a room inside the store to await the arrival of police. Mr. Johnson asserts that Mr. Acton used excessive force to make the shoplifter sit down so that his handcuffs could be secured to a bench. It is undisputed that the shoplifter was not injured, that he did not complain about his treatment when the police arrived, and that he never complained to Target regarding Mr. Acton's treatment of him.

Mr. Johnson made the decision to fire Mr. Acton. He notified four executives: Rob Parke, the human resources manager for Group 198; Nikki Solace, the District 157 human resources manager; Michael Brewer, a specialist in Target asset protection policies at Target's Minnesota headquarters; and Rylan Rankin, head of asset protection for Group 198. Mr. Johnson forwarded the video for their review. Between September 7 and September 10, each of them stated that they had reviewed the video and believed that it warranted termination. Ms. Solace said that she would seek legal counsel about what to do in light of Mr. Acton's FMLA leave. Target decided not to notify Mr. Acton of the termination until he returned from leave. Mr. Johnson contacted Mr. Acton at least once after the termination decision had been made, but did not notify him of the termination.

Mr. Acton was given no opportunity to explain his conduct with the shoplifter. No one at Target interviewed Mr. Findlay, the only other eyewitness to the allegedly unreasonable use of force. Mr. Tomlinson was not consulted either about the shoplifter apprehension or the decision to fire Mr. Acton.

Mr. Acton contends that his use of force was not only reasonable, but in line with Target's written directives for asset protection employees. At least five other former Target ETLAPs who worked at Target stores in District 157 concurred after reviewing

ORDER – 6

the video.  Mr. Acton submitted the directives as evidence.  A jury could find that Mr. Acton complied with them.

Target could have fired Mr. Acton because of his use of force on the shoplifter.  Target can set its own standards for the use of force, and can make its own judgments about when those standards are violated.  Indeed, it can even choose not to follow its standards, and judge the use of force at its own whim.  Mr. Acton's protestations that he followed Target policy, however well-founded, are irrelevant in this regard.

The issue in this case is not whether Target could have fired Mr. Acton for his use of force, but whether it actually did.  There is evidence from which a reasonable jury could conclude that it did not.  By the time Mr. Johnson reviewed the video, a jury could conclude that he had already begun a search for a reason to fire Mr. Acton.  A jury could conclude that he had asked Mr. Acton's former and current supervisors, as well as others, to relay any information that might support a termination decision.  A jury could conclude that Mr. Johnson's decision to review the report on the July 7 apprehension almost two months after the fact was part of his search for a reason to terminate him.  A jury could conclude that there was nothing inherently suspicious about Mr. Acton's written description of the shoplifter apprehension, and that Mr. Johnson's admittedly extraordinary decision to travel to Burlington to view the video is evidence that he was looking for a reason to fire Mr. Acton.  Finally, there is evidence from which a jury could find that Mr. Johnson's conclusion that Mr. Acton used excessive force was predetermined by his desire to fire Mr. Acton.  He did not interview Mr. Acton about the incident.  He did not interview Mr. Findlay.  While he had earlier canvassed Mr. Acton's peers and supervisors in search of information about his absences, he did not ask any of them about their views on the apprehension.  In light of all the evidence, a reasonable jury could conclude that a supervisor who did not want to fire Mr. Acton for another reason would have come to the conclusion that Mr. Acton did not use excessive force.

ORDER – 7

Even if Mr. Johnson's explanation for firing Mr. Acton was pretextual, that does not necessarily mean that his actual reason for firing him was unlawful. A jury could conclude, however, that Mr. Johnson's quest for a basis to terminate Mr. Acton coincided with his medical leave. A jury could also conclude that Mr. Johnson preferred to replace Mr. Acton with a worker who was not burdened by disabling headaches.

The court finds that issues of material fact prevent the court from ruling that Target did not discriminate or retaliate as a matter of law. A jury could find that Target violated the WLAD and the ADA by firing Mr. Acton at least in part because of his disability. A jury could also find that Target fired Mr. Acton at least in part to retaliate against him for taking FMLA leave. Summary judgment on those claims is therefore inappropriate.

**B.    A Jury Could Not Conclude that Target Failed to Reasonably Accommodate Mr. Acton's Disability or Fired Him in Violation of Public Policy.**

Two of Mr. Acton's claims cannot survive summary judgment. The first is his state law claim for wrongful termination in violation of public policy. Mr. Acton's complaint raises this claim, but he does not even address it in his response to Target's summary judgment motion. Even if he had, his other state and federal claims are more than adequate to vindicate any Washington policy against discriminatory or retaliatory termination.

The court also rules that Mr. Acton cannot prevail on a claim that Target failed to reasonably accommodate his disability. This claim arises from Mr. Acton's contention that Mr. Johnson refused to permit him to take headache medication at work, thus exacerbating his condition. There is scarcely any evidentiary support for the claim that Mr. Acton was barred from taking medication. Even accepting that claim, however, there is no dispute that Mr. Acton requested and received paid medical leave, an accommodation that he requested to permit him to adjust to new medication and to

ORDER – 8

control his headaches.  The court rules that this is a reasonable accommodation as a matter of law.

### IV.  CONCLUSION

For the reasons stated above, the court DENIES Target's motion for summary judgment.  Dkt. # 60.  In denying that motion, the court has in no way relied on Mr. Acton's admittedly untimely surreply and motion to strike.  The court therefore DENIES Mr. Acton's motion (Dkt. # 106) for an extension of time to file his surreply.

Trial in this matter is set to begin on May 3, 2010.  The court has another matter set for trial on May 10, 2010.  The May 10 trial date is firm.  It appears that trial in this case will take more than a week, and the court will not commence the trial on May 3 unless the parties are willing to agree to submit the case to the jury by the end of Friday, May 7.  Accordingly, the court offers the parties the following three options:  they may commence trial on April 26, they may commence trial as scheduled on May 3, with an agreement to submit the case to the jury by 4:30 p.m. on May 7; or they may commence trial on June 1.  The parties shall meet and confer to discuss the options, and then submit a joint statement by April 16, 2010, stating their preferred option.

DATED this 9th day of April, 2010.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9